UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

SHIRLEY BURNS,

                Plaintiff,

vs.                        Case No.  2:10-cv-573-FtM-29DNF

CITY OF CAPE CORAL,

                Defendant.
_____

**OPINION AND ORDER**

This is an employment discrimination action in which plaintiff asserts that defendant unlawfully denied her severance pay and eliminated her position in a reduction of force on the basis of her race and gender in violation of Title VII of the Civil Rights Act and the Florida Civil Rights Act. On February 15, 2012, defendant filed a Motion for Summary Judgment and Incorporated Memorandum of Law (Doc. #35). Plaintiff filed a Response (Doc. #46) on April 2, 2012. For the reasons set forth below, the motion is granted.

**I.**

Summary judgment is appropriate only when the Court is satisfied that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." Baby Buddies, Inc. v. Toys R Us, Inc., 611 F.3d 1308, 1314 (11th Cir. 2010)(citation omitted). A fact is

"material" if it may affect the outcome of the suit under governing law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The moving party bears the burden of identifying those portions of the pleadings, depositions, answers to interrogatories, admissions, and/or affidavits which it believes demonstrate the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Hickson Corp. v. N. Crossarm Co., Inc., 357 F.3d 1256, 1259-60 (11th Cir. 2004).  To avoid the entry of summary judgment, a party faced with a properly supported summary judgment motion must come forward with extrinsic evidence, i.e., affidavits, depositions, answers to interrogatories, and/or admissions, which are sufficient to establish the existence of the essential elements to that party's case, and the elements on which that party will bear the burden of proof at trial.  Celotex, 477 U.S. at 322; Hilburn v. Murata Elecs. N. Am., Inc., 181 F.3d 1220, 1225 (11th Cir. 1999).

In ruling on a motion for summary judgment, the Court views all evidence and draws all reasonable inferences in favor of the non-moving party.  Scott v. Harris, 550 U.S. 372, 378 (2007); Tana v. Dantanna's, 611 F.3d 767, 772 (11th Cir. 2010).  However, "[i]f reasonable minds might differ on the inferences arising from undisputed facts, then the court should deny summary judgment." St. Charles Foods Inc. v. Am.'s Favorite Chicken Co., 198 F.3d 815, 819 (11th Cir. 1999), quoting Warrior Tombigbee Transp. Co. v. M/V

Nan Fung, 695 F.2d 1294, 1296 (11th Cir. 1983)(finding summary
judgment "may be inappropriate even where the parties agree on the
basic facts, but disagree about the factual inferences that should
be drawn from these facts").   "If a reasonable fact finder
evaluating the evidence could draw more than one inference from the
facts, and if that inference introduces a genuine issue of material
fact, then the court should not grant summary judgment."   Allen v.
Bd. of Pub. Educ., 495 F.3d 1306, 1315 (11th Cir. 2007).

## II.

Defendant City of Cape Coral is a municipality in Lee County,
Florida.   Plaintiff, Shirley Burns, is an African American woman
who has worked for the City since 1992.   (Doc. #34-17, p. 15.)
Plaintiff began as an Internal Auditor, then held several positions
with the City over the years, and eventually was promoted to Deputy
Director of the Department of Community Development ("DCD") in
November 2006.   (Id., pp. 15, 80-81.)

In 2008, the City implemented layoffs and early retirement
buyouts in order to reduce the City's expenditures.   On June 2,
2008, the City Council passed three buyout ordinances for the
employees in the General Employees' Retirement Plan, the Police
Officers' Retirement Plan, and the Firefighters' Retirement Plan.
(Doc. #35, p. 6.)   The ordinances gave eligible employees 90 days,
or until August 31, 2008, to make "an irrevocable written election"
to take the early retirement buyouts.   (Doc. #46, p. 4.)   Plaintiff

was among 19 employees who participated in a separate 401(a) Defined Contribution Plan.[1]   (Doc. #46, pp. 7-8.)   Because of concerns about the legality of giving the 401(a) Plan employees an early retirement buyout, the City did not present a 401(a) Plan buyout ordinance to the City Council at the June 2, 2008 meeting. (Id.)

On August 27, 2008, the Assistant City Manager and acting Director of the DCD, Carl Schwing, approached plaintiff regarding the possibility of early retirement.   (Id., p. 8.)   Plaintiff responded that she would retire if she received a buyout payment that would be equivalent to two weeks' salary for each year of service.   (Doc. #34-17, pp. 125-27.)   Expecting that the City Council would pass a buyout ordinance for the 401(a) Plan employees once it was presented to them, plaintiff participated in and agreed with the decision to eliminate her position in the City's FY 2009 operating budget.   (Id., pp. 116-17.)

On September 9, 2008, Schwing sent the FY 2009 budget proposal, in which he recommended the elimination of plaintiff's position as of January 31, 2009, to the City Manager, Terry Stewart, and the City's Financial Services Director, Mark Mason. (Doc. #34-14, pp. 3-8.)   On September 15, 2008, Stewart and Mason

---

[1]Plaintiff had an opportunity to transfer back into the General Employees' Retirement Plan after July 28, 2008; however, when she learned that it would cost her $198,000, she did not elect to transfer.   (Doc. #34-17, pp. 103-04.)

sent a memorandum to the Mayor and City Council members regarding the proposed FY 2009 budget. (Doc. #34-13, ¶ 22.) At the September 17, 2008, City Council Meeting, the City Council passed an ordinance adopting the City's final operating budget, revenues and expenditures, and capital budget for FY 2009, which eliminated several positions including plaintiff's. (Doc. #35, p. 10.)

A month later, at the October 20, 2008, City Council Meeting, a buyout ordinance for employees in the 401(a) Plan, was defeated in a 6-to-2 vote by the City Council because most of the Council members believed that the severance plan did not make good fiscal sense for the City. (Id., pp. 11-12.) The City Council was not aware that Plaintiff was eligible for the severance benefit when it voted down Ordinance 116-08. (Id.)

Because plaintiff's position would be eliminated as of January 31, 2009, she would be laid off on that day unless she moved into a vacant position or exercised her "bumping rights." (Doc. #34-18, pp. 221-22.) In late December 2008, Schwing provided plaintiff with a list of positions she could move into, however, plaintiff did not choose to transfer into any of the vacant positions. (Id., pp. 244-48.) On January 2, 2009, Schwing delivered a reduction of force letter to plaintiff with the effective date of layoff being January 31, 2009. (Id., pp. 223-24.) On January 9, 2009, plaintiff chose not to exercise her "bumping" rights. (Id., pp. 228-29.) On January 20, 2009, plaintiff submitted her intent to

-5-

retire from her employment with the City. (Id., p. 259.) Plaintiff retired on January 30, 2009 with a letter of recommendation from Schwing. (Id., pp. 260-61.)

Plaintiff, on or about March 3, 2009, filed a charge with the Equal Employment Opportunity Commission which was cross filed with the Florida Commission on Human Relations, alleging race, age, and gender discrimination. (Doc. #1, ¶ 7.) On or about June 22, 2010, the EEOC issued a dismissal and notice of rights. (Id., ¶ 8.) Plaintiff then filed a four-count federal Complaint (Doc. #1) alleging discrimination based upon gender and race. Counts I and III allege violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e (Title VII), while the parallel Counts II and IV allege the same acts as violations of the Florida Civil Rights Act (FCRA), Chapter 760, Florida Statutes.[2]

## III.

Plaintiff alleges that she was discriminated against based on her race and gender because her race and gender were motivating factors in the termination of her employment and in the denial of severance pay. It is undisputed that there is no direct evidence of such racial or gender discrimination, and defendant relies upon

---

[2]The FCRA is modeled after Title VII, Joshua v. City of Gainesville, 768 So. 2d 432, 435 (Fla. 2000), and decisions construing Title VII are applicable to claims under the FCRA. Jiles v. United Parcel Serv., Inc., 360 F. App'x 61, 63 (11th Cir. 2010)(citing Harper v. Blockbuster Entm't Corp., 139 F.3d 1385, 1387 (11th Cir. 1998)). Therefore, the Court will not independently analyze the FCRA claims.

circumstantial evidence. The parties agree that the burden-shifting framework established in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973), and <u>Texas Dep't of Cmty. Affairs v. Burdine</u>, 450 U.S. 248 (1981) applies to these claims. Under this framework, an employee must first establish a *prima facie* case of discrimination before the burden shifts to the employer to articulate legitimate, nondiscriminatory reasons for the discrimination, after which the burden shifts back to the plaintiff to produce evidence sufficient to allow a reasonable fact finder to conclude that the employer's reasons were pretextual. <u>Wilson v. B/E Aerospace, Inc.</u>, 376 F.3d 1079, 1087 (11th Cir. 2004).

**A. *Prima Facie* Case**

Two different standards apply to plaintiff's claims of discrimination:

> Ordinarily, to establish a *prima facie* case of discrimination under Title VII, the plaintiff must establish that (1) she is a member of a protected class; (2) she was subjected to adverse employment action; (3) her employer treated similarly situated employees who are not members of the plaintiff's class more favorably; and (4) she was qualified for the job. . . . In reduction-in-force cases, however, a plaintiff establishes a prima facie case of discrimination by (1) showing that [she] was a member of a protected group and was adversely affect by an employment decision; (2) proving that [she] was qualified for [her] position or to assume another position at the time of the discharge; and (3) producing sufficient evidence from which a rational fact finder could conclude that his employer intended to discriminate against him in making the discharge decision. We have held that, in reduction-of-force cases, the employer "seldom" seeks to replace the discharged employee.

Lawver v. Hillcrest Hospice, Inc., 300 F. App'x 768, 772-73 (11th Cir. 2008)(internal quotations and citations omitted).  The Court will analyze the denial of severance pay claim under the ordinary test and the termination claim under the reduction in force test.

With respect to plaintiff's denial of severance pay claim, defendant only challenges the third element, which requires plaintiff to present "comparator" evidence which demonstrates she was treated less favorably than a similarly situated individual outside of her protected class.  "In order to meet the comparability requirement a plaintiff is required to show that [she] is similarly situated in all relevant aspects to the non-minority employee."  Silvera v. Orange Cnty. Sch. Bd., 244 F.3d 1253, 1259 (11th Cir. 2001), cert. denied, 534 U.S. 976 (2001).  In other words, plaintiff must be "matched with a person or persons who have very similar job-related characteristics and who are in a similar situation" to plaintiff.  MacPherson v. Univ. of Montevallo, 922 F.2d 766, 775 (11th Cir. 1991); see also Ren v. Univ. of Cent. Fla., 390 F. Supp. 2d. 1223, 1229-30 (M.D. Fla. 2005), aff'd, 179 F. App'x 680 (2006).  The Eleventh Circuit has stated, however, that "[e]xact correlation is neither likely nor necessary, but the cases must be fair congeners."  Maniccia v. Brown, 171 F.3d 1364, 1369 (11th Cir. 1999)(quoting Dartmouth Review v. Dartmouth Coll., 889 F.2d 13, 19 (1st Cir. 1989)).

Plaintiff argues the following constitutes comparator evidence: (1) the City Parks and Recreation Director, Steve Pohlman, who participated in the General Employees' Retirement Plan, irrevocably elected the early retirement buyout but shortly afterwards requested to return to his position and was allowed to do so by the City Manager; (2) the nearly one thousand employees who were laid off or took an early retirement buyout in 2008, the majority of whom were white and had the opportunity to receive a buyout; and (3) the six other Deputy Directors who retained their jobs in 2008, all of whom are white and several of whom are male. (Doc. #46, pp. 7,12.)

Viewing the facts in the light most favorable to the plaintiff, the Court finds that none of the categories qualify as an appropriate comparator. Pohlman is not a valid comparator because: (i) he participated in the General Employees' Retirement Plan; (ii) his position was not eliminated by the City Council and remained unfilled; and (iii) he was a department director. The category of nearly one thousand employees do not serve as adequate comparators because plaintiff has failed to show that any of them "have very similar job-related characteristics and . . . are in a similar situation" or that they are outside her protected class. See MacPherson, 922 F.2d at 775. The six other deputy directors held a similar position as plaintiff, however, plaintiff has failed to demonstrate that any of them were in a "similar situation."

Therefore, plaintiff fails to produce a sufficient comparator to establish a *prima facie* case for her severance pay claim.

Similarly, plaintiff fails to establish a *prima facie* case for her reduction in force claim. Defendant only challenges the last element, which requires plaintiff to show "other evidence of discrimination" or that the City "intended to discriminate against [her] on the basis of" her race or gender. To establish intent, plaintiff must proffer evidence that could lead a factfinder to conclude that: (1) the City consciously refused to consider retaining her because of her race or gender; or (2) the City regarded race or gender as a negative factor in such consideration. Padilla v. N. Broward Hosp. Dist._, 270 F. App'x 966, 971 (11th Cir. 2008)(citation omitted). Plaintiff fails to submit evidence showing race or gender animus generally and she points to no such evidence involving herself personally. Plaintiff argues that her termination as the only African American deputy director gives rise to an inference of discrimination. The undisputed facts establish otherwise. The undisputed evidence of a decrease in revenues affecting the City's budget, the City's desire to reduce expenses, and the contemporaneous elimination of the Deputy Director position in the Human Resources Department (Doc. #34-9, ¶ 8), demonstrates that the City did not "intend[] to discriminate against [her] on the basis of" her race or gender.

**B. Legitimate, Non-Discriminatory Reason for Termination**

Alternatively, even if plaintiff established a *prima facie* case of race and gender discrimination, defendant has rebutted that showing by producing evidence of a legitimate, non-discriminatory business reason for the termination.   An employer's burden of rebuttal is "extremely light."   <u>Tipton v. Canadian Imperial Bank of Commerce</u>, 872 F.2d 1491, 1495 (11th Cir. 1989).   Defendant proffers several legitimate nondiscriminatory reasons for plaintiff's termination and denial of a buyout.   First, the City Council members who did not vote for the 401(a) Plan buyout found it fiscally irresponsible and did not see any savings to the City. (Doc. #35, pp. 20-21.)   Second, the City Council members who voted to adopt the FY 2009 budget found the cuts necessary to reduce the City's expenditures when the City's revenues were decreasing. (<u>Id.</u>, p. 21.)   Third, Stewart and Schwing proposed the elimination of plaintiff's position after plaintiff's agreement to do so. (<u>Id.</u>)

**C. Showing of Pretext**

Assuming still the showing of a *prima facie* case, the burden would shift back to plaintiff to show that the City's proffered reasons are pretext for unlawful discrimination.   A plaintiff can satisfy her burden of showing pretext "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's

proffered explanation is unworthy of credence." <u>Burdine</u>, 450 U.S. at 256.  There must be sufficient evidence to allow a reasonable fact-finder to conclude that the employer's articulated reasons are not believable.  <u>Jackson v. Ala. State Tenure Comm'n</u>, 405 F.3d 1276, 1289 (11th Cir. 2005)(citation omitted).  This can be accomplished by pointing to "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in the proffered explanation.  <u>Id.</u>; <u>Silvera</u>, 244 F.3d at 1258 (citation omitted). The plaintiff must present significant and probative evidence of pretext in order to avoid summary judgment.  <u>Mayfield v. Patterson Pump Co.</u>, 101 F.3d 1371, 1376 (11th Cir. 1996).

If the proffered reason was legitimate and nondiscriminatory, then the plaintiff must meet the proffered reason head on and rebut it, and cannot succeed by simply quarreling with the wisdom of that reason.  <u>Brooks v. Cnty. Comm'n of Jefferson Cnty., Ala.</u>, 446 F.3d 1160, 1163 (11th Cir. 2006).  A reason is not pretext for discrimination unless it is shown both that the reason was false, and that discrimination was the real reason.  <u>St. Mary's Honor Ctr. v. Hicks</u>, 509 U.S. 502, 515 (1993).  Thus, the Court must determine, "in view of all the evidence, whether the plaintiff has cast sufficient doubt on the defendant's proffered nondiscriminatory reasons to permit a reasonable factfinder to conclude that the employer's proffered legitimate reasons were not what actually motivated its conduct."  <u>Crawford v. Carroll</u>, 529

F.3d 961, 976 (11th Cir. 2008)(internal quotations and citation omitted).

Plaintiff does not seem to argue that the City Council's reasons for adopting the FY 2009 budget and voting against Ordinance 116-08 were pretextual. Instead, plaintiff focuses her argument on Assistant City Manager Carl Schwing's conduct. Plaintiff argues that the City's legitimate reasons are pretextual because: (1) Schwing started "packing" plaintiff's head with fears that her position may be eliminated just prior to the City Council's consideration of the FY 2009 budget, even though her position's elimination had not been proposed at that point; (2) Schwing had plaintiff agree to eliminate her position in return for a buyout agreement he did not have in place; and (3) Schwing and city management failed to use their "wide discretion." (Doc. #46, pp. 13-14.)

None of plaintiff's arguments meet the City's legitimate reasons head on. Plaintiff does not deny that the City needed to reduce its expenditures given that the City's revenues were decreasing; that Stewart and Schwing recommended that plaintiff's position be eliminated in the FY 2009 budget along with a number of other positions only after plaintiff's agreement; and that Ordinance 116-08, which denied plaintiff the buyout she sought,

equally affected white males.[3]   In view of all the evidence, plaintiff's assertion that Schwing coerced her to agree to the elimination of her position in exchange for a buyout and city management's failure to reinstate plaintiff's position both fail to cast sufficient doubt on the defendant's proffered nondiscriminatory reasons.

Accordingly, it is now

**ORDERED**:

1.   Defendant's Motion for Summary Judgment (Doc. #35) is **GRANTED** as to all Counts.

2.   The Clerk of the Court shall enter judgment accordingly as to all Counts in favor of defendant and against plaintiff.  The Clerk is further directed to terminate all pending motions and deadlines as moot, cancel all hearings, and close the case.

**DONE AND ORDERED** at Fort Myers, Florida, this <u>13th</u> day of June, 2012.

<u>John E. Steele</u>
JOHN E. STEELE
United States District Judge

Copies: Counsel of record

---

[3]Plaintiff admits that the 401(a) Plan buyout ordinance would have benefitted herself and two white males, Fred DeBono, who had decided to retire as Fleet and Warehouse Supervisor, with or without the bonus, and John Chandler, a safety officer in the Risk Division of the Human Resources Department who bumped down to an inventory clerk's job in Parks and Recreation.  (Doc. #46, p. 8.)